**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony GARRETT, Defendant–
Appellant.**

No. 94–1364.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1994.

Decided Jan. 25, 1995.

Michael C. Carr, Asst. U.S. Atty. Benton, IL (argued), for plaintiff-appellee.

William D. Stiehl, Jr., Wimmer, Stiehl & Montalvo, Belleville, IL (argued), for defendant-appellant.

Before POSNER, Chief Judge, MANION, Circuit Judge, and ASPEN, District Judge.[*]

---

[*] The Honorable Marvin E. Aspen, District Judge of the Northern District of Illinois, sitting by desig-

ASPEN, District Judge.

After a jury trial, Anthony Garrett was convicted of conspiracy to distribute and possession with intent to distribute "crack cocaine," in violation of 21 U.S.C. § 846. Garrett was also convicted of using and carrying a firearm during the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)–(2). He was sentenced to consecutive terms of 360 months on the conspiracy charge and 120 months on the firearms charge, for a total sentence of 480 months incarceration. Garrett raises three issues on appeal: (1) whether his pretrial detention exceeded the time restraints of the Speedy Trial Act, (2) whether the district court erroneously applied the career offender guideline to him at sentencing, and (3) whether there was sufficient evidence to hold him responsible for transporting between 500 grams and 1.5 kilograms of cocaine base. We affirm.

## I. Background

Garrett's involvement with co-defendants Michael Roberts and Phillip Davis began at least as early as April 1993. Davis, who was living in Houston, Texas, was asked by Roberts to find a supplier of crack cocaine for Garrett and his associate Deandre Lampkins, both of whom had driven down to Houston from Cairo, Illinois. Davis arranged for the purchase of a total of 14.5 ounces of crack cocaine for himself, Lampkins, Roberts, and Garrett's brother, Darrell Williams, from a local dealer. The drugs were then transported by Garrett and Lampkins back to Cairo, where Davis, Roberts, Lampkins and Garrett began packaging and selling the drugs from an apartment in the McBride Housing Project. In order to protect their enterprise, Davis purchased a semi-automatic sawed-off assault rifle and kept it in the apartment with the knowledge and approval of Roberts and Garrett.

Acting on information that large amounts of drugs were being distributed from the apartment used by Garrett and his cohorts, law enforcement officers executed a search warrant on the apartment on April 14, 1993.

nation.

Officers testified that they recovered a plastic bag of crack cocaine, the sawed-off rifle, ammunition and a clip fitting the weapon, electronic scales (which they testified were commonly used by drug dealers), and assorted amounts of cash and drug paraphernalia.

On May 12, 1993, Garrett was indicted with Roberts and Davis on one count of conspiracy to knowingly distribute, and possession with intent to distribute, a mixture containing cocaine base, and one count of using and carrying a firearm during drug trafficking. Garrett and Davis were arraigned on May 18, 1993, and Roberts was arraigned on May 20, 1993. All three defendants entered pleas of not guilty. At Garrett's arraignment, the magistrate sua sponte ordered that pretrial motions be filed within ten days and responses filed within ten days thereafter.

Although no motions were filed by either the defendants or the government during this period, pretrial motions were filed soon afterwards. On June 18, 1993, co-conspirator Roberts moved for a copy of the transcript of the detention hearing, and this motion was granted the same day. Garrett requested the same transcript on June 23, 1993, and this motion was granted on June 29, 1993. Roberts filed a motion for a bill of particulars on July 12, 1993, and this motion was denied on July 23, 1993.

Also on July 23, 1993, Garrett was ordered by the district court to be transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri, in order to have pulmonary tests conducted. On September 1, 1993, after evaluating Garrett's condition, his treating physician concluded that Garrett could be returned to the Southern District of Illinois to stand trial, and the district court was advised of this in a letter dated September 10, 1993 by the Warden of the Medical Center. Garrett was returned to the district court on September 22, 1993.

Garrett filed a motion to dismiss the indictment on October 29, 1993, arguing that he had not been tried within seventy days of his arraignment as required by the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. This motion was denied by the district court in a written order on November 15, 1993. Garrett's jury trial began that same day, and a verdict of guilty was returned on November 17, 1993.

At his sentencing, the government introduced evidence indicating that Garrett had been a regular dealer of crack cocaine for some time and had substantial dealings with his brother, Darrell Williams. The government also presented excerpts of an interview with Troy Wilbur Daniels—a known drug dealer who had previously pled guilty to distributing more than two kilograms of crack cocaine—indicating that he had loaned six to seven ounces of crack cocaine to Williams on at least five separate occasions. Based on this evidence, as well as the 14.5 ounces (approximately 400 grams) of crack that Garrett was convicted of possessing, the district court found that appellant was responsible for selling between 500 and 1500 grams of crack cocaine. The court also found that Garrett was a career offender as defined in U.S.S.G. § 4B1.1, and sentenced him to a total of 480 months incarceration.

## II. Discussion

### A. Speedy Trial Act

◼ The district court denied Garrett's motion to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, finding that although 179 days had elapsed between the time the last co-conspirator had been arraigned and the start of Garrett's trial, 116 of those days were excludable. Therefore, since only sixty-three non-excludable days had elapsed between arraignment and trial, Garrett's motion was denied. We review the district court's interpretation of the Speedy Trial Act de novo, and its findings of fact concerning the Act for clear error. *United States v. Culp,* 7 F.3d 613, 617 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 2108, 128 L.Ed.2d 668 (1994); *United States v. Tanner,* 941 F.2d 574, 579 (7th Cir.1991), *cert. denied,* 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992).

◼ The Speedy Trial Act mandates that a defendant who has pled not guilty must be tried within seventy days after the filing of an indictment, or the date on which the defendant first appears before a judicial officer, whichever is later. 18 U.S.C.

§ 3161(c)(1). Where more than one defendant is charged in an indictment, the Speedy Trial clock begins running on the date of the last co-defendant's arraignment. *Henderson v. United States,* 476 U.S. 321, 323 n. 2, 106 S.Ct. 1871, 1873 n. 2, 90 L.Ed.2d 299 (1986). Although the Act ostensibly requires trial within seventy days, it also provides for the exclusion of certain periods of time from this calculation, including:

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; [and]

. . .

(H) delay resulting from the transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date [of] an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable. . . .

18 U.S.C. § 3161(h)(1). These two exclusion provisions are at the center of Garrett's appeal.

The district court held that the twenty day period ordered by the magistrate judge for filing and responding to pretrial motions was excludable. The district court also excluded the time between the filing and disposition of the four pretrial motions which were actually filed after this twenty day window closed. Garrett challenges the exclusion of both of these periods, first arguing that the initial period should not be counted because it was ordered by the magistrate judge sua sponte and no motions were actually filed, and next contending that the exclusion of both the later periods as well as the initial twenty day period amounts to double counting.

██ With regard to the ten day period established by the magistrate for filing of pretrial motions, Garrett cannot mount a successful challenge since such a period is clearly excludable from Speedy Trial Act calculations in this circuit. *United States v. Piontek,* 861 F.2d 152, 154 (7th Cir.1988). Moreover, this ten day period is excludable even though no motions were actually filed by the parties. *United States v. Montoya,* 827 F.2d 143, 153 (7th Cir.1987). If Garrett believed this period to be too long, or if the defendants did not intend to file anything during this time, it was incumbent upon them to point this out to the district court. *Montoya,* 827 F.2d at 153. Therefore, we reject Garrett's attack on the excludability of the initial ten day period.[1]

██ Furthermore, the counting of both this ten day period and the later periods when motions were actually filed and decided does not amount to double counting. The initial period of time was set aside for the preparation of motions, regardless of whether any were eventually filed. *Montoya,* 827 F.2d at 153. The later periods of time were used by the parties to brief and the court to decide the motions that defendants filed after the expiration of the initial ten day period.[2] These later periods are clearly excludable under Section 3161(h)(1)(F) even though the earlier ten days were also excluded, *see United States v. Barnes,* 909 F.2d 1059, 1064–65 (7th Cir.1990), and removing them from the Speedy Trial clock does not amount to any unfairness towards the defendants since most of these motions could have been filed during the initial period set by the magistrate judge. The fact that defendants chose not to take advantage of this initial filing period does not render the exclusion of the later periods inequitable. Thus, the district court correctly excluded an additional thirty-seven days to account for the filing and disposition of these four pretrial motions.[3]

---

**1.** In calculating the exclusion of these ten days, intervening Saturdays, Sundays and legal holidays are not included. Fed.R.Crim.P. 45(a). Therefore, the excludable time set for filing of defendants' motions ran from May 19 to June 2.

**2.** These included one day for Roberts' request for the detention hearing transcript, seven days for Garrett's motion for the same transcript, eleven days for Roberts' motion for a bill of particulars,

and eighteen days for Garrett's motion to dismiss.

**3.** The following dates were excluded: June 18 (Roberts' motion for transcript), June 23–29 (Garrett's motion for transcript), July 12–22 (Roberts' motion for bill of particulars), and October 29—November 15 (Garrett's motion to dismiss).

While we agree with the district court that the initial period for filing of pretrial motions was properly excluded, we are not so quick to agree that the tolling of the Speedy Trial clock continued during the time set aside for the government to respond to any pretrial motions, since no motions were actually filed. Although this very fact situation was presented to the court in *Montoya,* the panel did not reach the issue of the excludability of response time because even if these days were counted, the appellant in *Montoya* would still be under the seventy day limit. *Id.* at 153–54. Nor do any of the other cases cited by the government directly answer the question of whether such time is excludable from Speedy Trial Act calculations. *See, e.g., United States v. Barnes,* 909 F.2d 1059, 1064–65 (7th Cir.1990) (addressing only time allowed for filing of motions and time actually used); *United States v. Piontek,* 861 F.2d 152, 154 (7th Cir.1988) (addressing only time allowed for filing of motions). Indeed, it would appear at first blush that the reasoning of *Montoya*—that is, that the time set aside for the filing of motions is excludable even if no motions are actually filed because "the time served the purpose of allowing the defendant to consider what was in his best interests," *Montoya,* 827 F.2d at 153—is wholly inapplicable to deciding the question of whether response time that was not needed should also be excluded. Nonetheless, we need not decide this issue today because, as we discuss below, even if this response time is included in his Speedy Trial Act calculation Garrett was still brought to trial within the seventy day time limit.

■ Garrett's final challenge to the tolling of the Speedy Trial clock deals with the period of time from September 1 to September 22 when he was at the United States Medical Center in Missouri. There is no dispute that the Speedy Trial clock was tolled from July 23—when Garrett was ordered transferred to the Medical Center—until September 1. The disagreement centers on whether this exclusion period ended on September 1 or on September 10. Garrett argues that his hospitalization was complete on September 1 when his treating physician recommended that he be returned. He insists, therefore, that he should have been returned within ten days of this recommendation and any time in excess of this ten day period should not be excluded since the statute presumptively deems such time unreasonable. 18 U.S.C. § 3161(h)(1)(H) ("[A]ny time consumed in excess of ten days from the date [of] an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable"). The government differs, arguing that only on September 10, when the warden wrote to the district court indicating that Garrett was available for transportation, did the ten day period begin.[4]

■ Our inquiry begins by looking for the order or orders that authorized Garrett's return to the district court, since the statute marks the ten day period for transportation "from the date [of] an order ... directing such transportation." 18 U.S.C. § 3161(h)(1)(H). However, the record indicates that the district court only mentioned Garrett's return in its initial transfer order of July 23, 1993, and that no order directing his return was issued in September, 1993. While Garrett argues that his physician's report of September 1 begins the ten day transportation period, it cannot be the case that a physician in the federal prison system can initiate the transportation of a prisoner and thereby effect his rights under the Speedy Trial Act. Further, the statute is specific as to what triggers the ten day transportation period: the date of an order directing such transportation. Where, as here, there is no order, it is the period of transportation that matters for purposes of the Speedy Trial Act, and not the time that it took for prison administrators to relay the physician's report to the appropriate official. *See* 18 U.S.C. § 3161(h)(1)(H) (excluding "delay resulting from *transportation* of any defendant ... to and from places of examination or hospitalization") (emphasis added). Were it otherwise, the clock could begin run-

---

4. In fact, the government speculates that the district court probably received the letter on September 13 and probably issued an order for Garrett's return at that time. Unfortunately for the government, no such order appears in the record.

ning even though no official in authority was aware that the prisoner was ready to be returned. We hold that where, as here, no order directing the transportation of a defendant exists, the date upon which the defendant was authorized for transportation by the appropriate prison official controls the application of § 3161(h)(1)(H). In the instant case, the relevant date would be September 10—the date on which the Warden indicated to the district court that Garrett was ready for transportation.[5]

Counting ten days from September 10, but not including Saturdays, Sundays and legal holidays,[6] leads us to conclude that the Bureau of Prisons had until September 24 to return Garrett to the Southern District of Illinois. Garrett was returned on September 22, so the entire period from July 23 to September 22 is excludable from his Speedy Trial Act calculation. This leaves Garrett with sixty-eight days having expired on his Speedy Trial clock,[7] which is insufficient to require a dismissal of his indictment. In sum, although the district court's calculations were flawed, we nonetheless affirm its denial of Garrett's motion to dismiss under the Speedy Trial Act.

### B. Career Offender Enhancement

 At sentencing, the district court found that Garrett qualified for a career offender enhancement under U.S.S.G. § 4B1.1 since (1) he was at least eighteen years old upon commission of the instant offense, (2) the instant felony was a "controlled substance offense," and (3) he had at least two prior felony convictions for crimes of violence or controlled substance offenses. Garrett argues that the Sentencing Commission exceeded its delegated authority by making the § 4B1.1 enhancement apply to conspiracy convictions such as his own, since conspiracy

is not one of the offenses specifically listed as a controlled substance offense in the enabling legislation, 28 U.S.C. § 994(h). *See United States v. Price*, 990 F.2d 1367 (D.C.Cir.1993) (invalidating Section 4B1.1).

This argument has already been considered and rejected by this circuit. In *United States v. Damerville*, 27 F.3d 254, 257 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 445, 130 L.Ed.2d 355 (1994), this court held that the Sentencing Commission's decision to include conspiracy within its definition of "controlled substance offenses" was a valid exercise of its authority under 28 U.S.C. § 994(a), which grants the Commission broad powers to determine terms of imprisonment and issue policy statements for construing the guidelines. Because conspiracy to distribute a controlled substance should be punished to the same extent as a controlled substance offense, *see* 21 U.S.C. § 846, the *Damerville* court found the Commission's interpretation of a "controlled substance offense" to be justified. 27 F.3d at 257–58. Accordingly, we hold that the district court correctly applied U.S.S.G. § 4B1.1.

### C. Relevant Conduct

 Finally, Garrett disputes the amount of drugs he was held accountable for at his sentencing. The district court found, based on the evidence adduced at trial and during the hearing, that appellant was responsible for the possession or distribution of between 500 and 1500 grams of crack cocaine, warranting a base offense level of 36. U.S.S.G. § 2D1.1(c)(4). Garrett argues that since he was only convicted of conspiring to distribute 14.5 ounces (approximately 400 grams) of crack cocaine, there was insufficient evidence to hold him responsible for between 500 and 1500 grams.

---

5. Although the September 10 letter to the district court states that the Marshall's Office had already been contacted, there is no evidence suggesting that this communication occurred on a day prior to September 10. Thus, it appears that September 10 is the most relevant date for beginning the countdown of transportation time.

6. As with the counting of the ten day period set aside for filing of pretrial motions, the ten day period for transporting a defendant to and from a medical facility does not include intervening

Saturdays, Sundays and legal holidays. *See* Fed. R.Crim.P. 45(a); *United States v. Bond*, 956 F.2d 628, 632 (6th Cir.1992) (applying Rule 45(a) to Section 3161(h)(1)(H)); *cf. United States v. Daly*, 716 F.2d 1499, 1504 n. 3 (9th Cir.1983) (applying Rule 45(a) to Speedy Trial Act calculations).

7. The dates included in his Speedy Trial Act calculation are June 3–17, June 19–22, June 30–July 11, and September 23–October 28.

 District court determinations of drug amounts are reviewed for clear error, and credibility determinations are given deference so long as support exists in the record. *United States v. Paters*, 16 F.3d 188, 191 (7th Cir.1994). "In a drug conspiracy, each conspirator is responsible not only for amounts with which he was directly involved, but also for amounts involved in transactions by co-conspirators that were reasonably foreseeable to him." *Id.* At sentencing, the government introduced interviews from three drug sellers who asserted that they had narcotics dealings with Garrett: Charles Purdiman, Troy Wilbur Daniels and Phillip Davis. Davis's interview outlined the events surrounding the possession and distribution of the 14.5 ounces of crack cocaine on which Garrett was convicted. Purdiman, who had extensive dealings with Garrett's brother Darrell Williams, described Garrett as one of Williams's regular sellers. Daniels indicated in his interview that he fronted six to seven ounces of crack cocaine to Darrell Williams on five or six occasions, and that Garrett had sold it on Williams' behalf. Although such evidence is hearsay, it may be considered by the sentencing judge so long as the defendant had a reasonable opportunity to rebut the information and it was reliable. *United States v. Campbell*, 985 F.2d 341, 348 (7th Cir.1993). Davis and Purdiman had previously testified before the district judge, and appellant had an opportunity to challenge their interviews. We see no basis for questioning the district court's acceptance of these interviews as reliable.

Furthermore, this evidence as to Garrett's history of drug dealing was corroborated by testimony adduced at trial. Shirley Reed testified that she had known Garrett since 1988, and during that time she did not know him to be employed as anything other than a drug dealer. Charles Purdiman testified that he had seen Garrett selling crack since January 1992, and that both he and Garrett had received crack from Williams to sell on his behalf. Finally, Gregory Ray testified that he had purchased drugs from Garrett on four different occasions during one evening in April 1993. In sum, given this evidence and appellant's conviction of conspiring to distribute 400 grams of crack cocaine, the district court did not commit clear error in holding appellant responsible for at least 500 grams of crack cocaine.

### III. Conclusion

For the reasons set forth above, the conviction and sentence of Garrett is

AFFIRMED.