97 F.3d 1454
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald J. HERTEL, Kenneth O. Lippitt and Robin W. Lippitt,
Defendants-Appellants.
 Nos. 95-3896, 95-3949, 95-3988.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 4, 1996.
Decided Sept. 26, 1996.
 
 Before CUMMINGS, COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 In Count One of the indictment, Donald Hertel, Kenneth Lippitt and Robin Lippitt were charged with conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846. The second count charged Robin Lippitt with possession of LSD with intent to distribute in violation of 21 U.S.C. § 841(a)(1). All defendants pled guilty but reserved the right to appeal adverse pretrial rulings on their motions to suppress evidence under Rule 11(a)(2) of the Federal Rules of Criminal Procedure.
 
 
 2
 Hertel received a 63-month term of imprisonment and Robin Lippitt was sentenced to concurrent terms of imprisonment of 46 months for the conspiracy and LSD offenses, while Kenneth Lippitt was determined to be a career offender and sentenced to 188 months' imprisonment. He was also ordered to pay a fine of $56,774.96. We affirm. The following facts are relevant to their motions to suppress evidence:
 
 
 3
 Hertel and Kenneth Lippitt and John Neu were inmates at the John Burke Correctional Institution in Dodge County, Wisconsin. Hertel and Lippitt devised a scheme to manufacture methamphetamine upon release. Kenneth mailed his brother Robin a recipe for making methamphetamine, including a diagram of a methamphetamine lab. Robin purchased some of the necessary materials for the lab prior to Kenneth's release from jail.
 
 
 4
 Kenneth Lippitt and John Neu were released from jail in late February or early March 1995 and Donald Hertel escaped on March 2. To ascertain Hertel's whereabouts, law enforcement authorities contacted Neu on March 23. He told them that Hertel might be staying in an apartment on Main Street in Janesville, Wisconsin. Neu said that he had rented that apartment during the first week of March but subleased it to Kenneth Lippitt later that week. Neu stated that Kenneth Lippitt and Hertel recently asked Neu if he knew anyone interested in buying or selling "crystal meth." Neu said he had recently been to the apartment and noticed that the gas service in the gas range was shut off. He saw a hot plate on the range and on the kitchen counter two or three glass beakers with black charring on the bottoms. He also observed a container of bleach and clothes that appeared to be Hertel's size.
 
 
 5
 After receiving the foregoing information, detective David Bier of the Rock County Sheriff's Department obtained a search warrant for Apartment 9 at 115 South Main Street that had been rented to Neu and subleased to Kenneth Lippitt. During their execution of the search warrant on the evening of March 23, law enforcement officers found a crude methamphetamine lab in the kitchen. They seized precursor chemicals and recipes for the manufacture of methamphetamine. They also recovered a small amount of processed ephedrin which could be converted into four to six grams of pure methamphetamine.
 
 
 6
 While Kenneth Lippitt had been arrested earlier on March 23, Hertel and Robin Lippitt were still at large. However, that same evening they were spotted in a vehicle near the Main Street apartment but they sped away and were chased by the police. Robin Lippitt bailed out of the car when it smashed into a light pole and discarded his wallet containing 93 doses of LSD. He was apprehended after a short foot chase. Although Hertel managed to escape, he was later arrested when a woman he was visiting summoned the police to her home.
 
 
 7
 After their indictment, the defendants attempted to obtain evidentiary hearings on their challenges to the search warrant. On July 14, 1995, they filed motions to suppress and for a hearing under Franks v. Delaware, 438 U.S. 154, on the grounds that the affiant in the search warrant had made false statements and that the police had illegally entered the apartment before the search warrant issued.
 
 
 8
 On July 27, 1995, the magistrate judge decided that defendants had made one proper ground for a Franks hearing, but the government agreed to redact the offending portion of its supporting affidavit so that a Franks hearing was denied. The magistrate judge also denied defendants an evidentiary hearing on the issue of illegal entry into the apartment because they did not show that the information obtained from that entry was used to support the application for the search warrant. While the magistrate judge subsequently suggested that the search warrant did not support the seizing of the precursor chemicals from the apartment, the district judge found to the contrary.
 
 
 9
 Denial of defendants' request for evidentiary hearing on motion to suppress
 
 
 10
 Defendants argue that the district court should have granted them an evidentiary hearing on the basis of an alleged warrantless search preceding the execution of the search warrant. Hertel alleged that some of the information in the search warrant might have been obtained through such a search. Subsequently all three defendants joined in that motion to suppress on the ground that the Main Street apartment had been entered by the police before they obtained a search warrant. A resident of the apartment building stated that he saw police entering the apartment with somebody resembling John Neu in the early afternoon of March 23, whereas the search warrant was not executed until 6:25 P.M. that day. However, an evidentiary hearing was denied because the magistrate judge found that the defendants made no showing that any information gleaned from the illegal search was used to support the subsequent warrant application. The magistrate judge pointed out that it was immaterial that detective Bier identified seven precursor chemicals in the "items to be seized" portion of the search warrant because that portion was not part of the search warrant affidavit nor considered by the issuing judge when making a probable cause determination. Moreover, the magistrate judge found that the agents would have sought a search warrant for the apartment to look for Hertel regardless of any information about the seven precursor chemicals, so that there was no causal nexus between the allegedly illegal pre-warrant search and the application for the search warrant. Therefore defendants had not shown that any warrantless entry caused the execution of the search warrant.
 
 
 11
 Denial of a Franks hearing was not erroneous
 
 
 12
 Defendants also claim that the magistrate judge and the district court should have granted them a hearing under Franks v. Delaware, 438 U.S. 154, on the ground that John Neu gave different versions of events to authorities before and after the issuance of the search warrant, thus impugning the veracity of detective Bier's statements in his supporting affidavit. In that affidavit, Bier swore to statements by Neu that he had last been in the apartment on March 15, that defendants Hertel and Kenneth Lippitt asked Neu if he knew to whom they could sell crystal methamphetamine and also told Neu they were "cooking stuff." These statements were consistent with Bier's written police report concerning his pre-warrant contact with Neu. However, Neu later stated that the last time he was in the apartment was on March 18, not 15, and that he was not sure whether Hertel or Kenneth Lippitt had mentioned that they were "cooking" methamphetamine. As the magistrate judge concluded, such inconsistencies were minor and immaterial and did not prove that Bier provided false statements.
 
 
 13
 District court's finding that search warrant affidavits provided a probable cause
 
 
 14
 Defendants attack the district court's findings with respect to probable cause for seizing the precursor chemicals. However, detective Bier's affidavit supported Judge Shabaz's conclusion that it would be reasonable to search for the precursor chemicals. The affidavit showed that the police had reason to believe they would find a methamphetamine cooking operation in the apartment. For such a purpose it is obvious that chemicals would be present, so that the district court's finding that the search warrant affidavit established probable cause to seize precursor chemicals was warranted.
 
 
 15
 Denial of Robin Lippitt's reduction for minor participation was justified
 
 
 16
 Robin Lippitt argues that Judge Shabaz erred in not designating him a minor participant under U.S. Sentencing Guideline 3B1.2 because he did not actively participate in the manufacture or sale of the methamphetamine. He also asserts that he received the recipe for the drug from his co-defendants rather than providing it. However, a lesser role does not make one a minor participant. United States v. Kerr, 13 F.3d 203, 206 (7th Cir.1993), certiorari denied, 114 S.Ct. 1629. Robin Lippitt received the methamphetamine recipe from his brother Kenneth while Kenneth was in jail. Robin proceeded to purchase a number of the necessary ingredients during that period. He delivered the necessary raw materials to the others upon their release. His acts were integral to the conspiracy and disqualify him for any reduction.
 
 
 17
 Kenneth Lippitt's status as a career offender
 
 
 18
 Kenneth Lippitt argues that the district court committed errors in addressing his status as a career offender. He submits that Application No. 1 to U.S.S.G. § 4B1.2 improperly includes conspiracy as a "controlled substance offense." However, we have held to the contrary in Boyer v. United States, 55 F.3d 296 (1995); United States v. Garrett, 45 F.3d 1135 (1995), and United States v. Damerville, 27 F.3d 254 (1994), and remain unpersuaded that we should reconsider this issue. United States v. Jones, 55 F.3d 289, 293 (7th Cir.1995).
 
 
 19
 Validity of Application Note 2 of U.S.S.G. 4B1.1
 
 
 20
 Kenneth Lippitt's statutory maximum penalty was enhanced from 20 to 30 years by virtue of his previous drug conviction. While this was inconsistent with Application Note 2 to U.S.S.G. 4B1.1, it accorded with 28 U.S.C. § 994(h). In United States v. Hernandez, 79 F.3d 584 (1996), we held that the statute controlled and that, as explained there, our construction was not contrary to Stinson v. United States, 508 U.S. 36, on which Kenneth Lippitt relies. We decline the invitation to overrule Hernandez and therefore refuse to vacate his sentence.
 
 
 21
 The fine imposed on Kenneth Lippitt was proper
 
 
 22
 Kenneth Lippitt argues that the $56,775 fine imposed on him was erroneous. We disagree. Section 5E1.2(a) of the Sentencing Guidelines provides that a district court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." We take this language seriously. United States v. Granado, 72 F.3d 1287, 1291 (1995). The presentence report discusses Kenneth Lippitt's assets and liabilities. It does not mention any dependents and notes that he is an unmarried 29-year-old male. His financial information disclosed the following assets: joint ownership of Milwaukee rental property worth $20,000; a Ford pickup truck worth $3,000; a jointly held business worth $4,000 and a checking and savings account worth $2,000. He was also receiving 36 monthly installments of $5,846.87 as the beneficiary of a life insurance policy. Those payments began in 1993 and were to terminate in July 1996 for a total of $200,000; at the time of sentencing he was to receive eight more such payments for December 1995 through July 1996, totaling $46,774.96. Beside considering these assets, Judge Shabaz noted that there were civil liens of $6,000 on the Milwaukee property but that defendant's net worth was $19,236 with an expected monthly income of $5,846.87. The court also recognized that defendant had over $9,000 in liabilities. Those factors justified the fine that was imposed.
 
 
 23
 While it is true that Kenneth Lippitt's life insurance benefits are not reachable by judicial process, there was no error in including them in assessing the fine. United States v. Granado, 72 F.3d 1287, 1294 (7th Cir.1995); United States v. Hickey, 917 F.2d 901, 907 (6th Cir.1990). Kenneth Lippitt retained dominion and control over the distribution of the life insurance benefits, so that it was appropriate for the district court to consider them as assets.
 
 
 24
 Lippitt argues that the district judge erred in considering his life insurance proceeds when calculating his assets and ability to pay a fine. Lippitt contends that since the life insurance proceeds were proceeds issued under the provisions of the Servicemen's Group Life Insurance Act of 1965, 38 U.S.C. § 1965 et seq., they are exempt from seizure or other attachment. However, because Lippitt's life insurance proceeds are not being attached, levied or seized, in the instant case, the statute's prohibition is inapplicable. The district judge in this case simply and appropriately included Lippitt's life insurance proceeds in the calculation of his assets. This was not error.*
 
 
 25
 Judgment and conviction order affirmed.
 
 
 
 *
 At oral argument, the government argued that 38 U.S.C. § 1970(g) (listing exceptions to the Servicemen's Group Life Insurance Act's prohibition against attachment, levy or seizure of benefits paid under the Act) provided support for the district judge's inclusion of Lippitt's insurance proceeds in the calculation of his assets. Because we find that no attachment, levy or seizure is involved in this case, we need not consider this argument or Lippitt's response