RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 07-3481

*v.*

MARKEITH TURNER,

*Defendant-Appellant.*

> ╲

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00009—Sandra S. Beckwith, District Judge.

Argued: November 30, 2009

Decided and Filed: March 19, 2010

Before: GUY, SUTTON and GRIFFIN, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Saber W. VanDetta, SQUIRE, SANDERS & DEMPSEY L.L.P., Cleveland, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Saber W. VanDetta, J. Philip Calabrese, Bruce A. Khula, SQUIRE, SANDERS & DEMPSEY L.L.P., Cleveland, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge. Markeith Turner challenges his convictions for seven drug- and gun-related crimes and the sentence that followed. Because Turner's indictment on two counts took longer than the Speedy Trial Act allows, we reverse these two convictions but otherwise affirm the remaining five convictions. We also vacate his sentence and remand to the district court for resentencing.

1

I.

After hearing gunshots on the evening of February 11, 2005, Officer Jason Rees of the Cincinnati Police Department rushed on foot toward the sound. Along the way, Rees noticed Markeith Turner, who had been walking toward him but changed directions and started walking in the opposite direction when he saw Rees. Rees followed Turner into a building, where Turner climbed the stairs, turned down a hallway and started banging on a door at the end of the hallway. "Let me see your hands," Rees ordered, and Turner complied, after which Rees handcuffed him. Trial Tr. at 2-81.

Meanwhile, Officer Kenneth Kilgore caught up with Rees and Turner, and found a handgun and what turned out to be crack cocaine and heroin lying on the floor where Turner had stood. Searching Turner, Kilgore found eight bullets wrapped in a handkerchief in his back pocket. At the station, Turner admitted that he had been holding the drugs—though for someone else, not for himself—and that he had fired the gun because "he had seen some drug dealers drive by and it made him paranoid" and he had hoped to "scare them out of the area." *Id.* at 2-25.

In April 2005, the United States charged Turner by complaint with being a felon in possession of a firearm and being a felon in possession of ammunition. *See* 18 U.S.C. § 922(g). After a lengthy examination to determine his competency, Turner was indicted for, then went to trial on, these two counts plus eight more: possession of a handgun in a school zone, *see* 18 U.S.C. § 922(q)(2)(A), possession with intent to distribute crack cocaine and heroin, *see* 21 U.S.C. § 841(a)(1), (b)(1)(C), being a fugitive in possession of a firearm and in possession of ammunition, *see* 18 U.S.C. § 922(g), being a person under indictment in possession of a firearm and in possession of ammunition, *see id.* § 922(n), and discharging a firearm during a drug-trafficking crime, *see id.* § 924(c)(1)(A)(i), (iii).

The jury convicted Turner on all counts save for possession with intent to distribute crack cocaine, and the district court dismissed the two fugitive-in-possession counts for lack of admissible evidence on his fugitive status. The court sentenced him to 382 months on the remaining seven counts.

II.

Turner first argues that the government's delay in indicting him requires us to dismiss two of the charges. The government allowed too much time to pass, he maintains, between his arrest on June 1, 2005, and his indictment on January 18, 2006, breaching its obligation under the indictment prong of the Speedy Trial Act. *See* 18 U.S.C. § 3161(b).

Under the Act, the government has thirty days to indict an individual after arresting him, *see id.*, though the Act contains many exclusions. Two matter here. One excludes "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant." *Id.* § 3161(h)(1)(A). The other excludes

> delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date [of] an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.

*Id.* § 3161(h)(1)(F).

In this case, the district court excluded "the entire delay" between the request for a competency evaluation and the competency hearing, reasoning that the competency-examination exclusion of § 3161(h)(1)(A) trumped the ten-day limit on transportation time of § 3161(h)(1)(F). R.31 at 7. The court reached this conclusion because it believed—quite reasonably—that *United States v. Murphy*, 241 F.3d 447 (6th Cir. 2001), required as much.

After the district court relied on *Murphy* for this point, this court determined that the relevant language in *Murphy* was dictum, holding instead that any "delay in transporting a defendant to a mental competency examination beyond the ten day limit imposed by § 3161(h)(1)(F) is presumptively unreasonable, and in the absence of rebutting evidence to explain the additional delay, this extra time is not excludable." *United States v. Tinklenberg*, 579 F.3d 589, 596 & n.2 (6th Cir. 2009). *Tinklenberg* reasoned that the alternative interpretation—one that would exclude transportation time under § 3161(h)(1)(A) but not limit it under § 3161(h)(1)(F)—would effectively read the latter provision out of the statute. *Id.* at 596; *see Bloate v. United States*, ___ U.S. ___, No. 08-728, slip op. at 8 n.9 (Mar. 10, 2010) (rejecting an interpretation of the Speedy Trial Act that would "render[]" a provision

of the Act "a nullity"). "The only way to avoid conflict" between those two provisions, we held, "is to read § 3161(h)(1)(F) as a specific exception to the general rule announced in § 3161(h)(1)(A)," imposing a presumptive limit of ten days for transportation on the otherwise unlimited time for competency hearings. 579 F.3d at 596; *see Bloate*, slip. op. at 10 ("[a] specific provision . . . controls one[s] of more general application") (quotation marks omitted). The government concedes that *Tinklenberg* defeats the primary arguments it made in its brief to this court.

In view of *Tinklenberg* and in view of the language of § 3161(h)(1)(F), we must reverse this aspect of the district court's decision. The relevant period under § 3161(h)(1)(F) began with the "order directing . . . transportation" and ended with the "defendant's arrival at the destination." The clock thus started on June 8, 2005, when the court ordered a competency examination for Turner and stated:

> Further, as part of this Order, the United States Marshal and the Bureau of Prisons are hereby directed to conduct the transportation and the evaluation of the defendant in an appropriate, expeditious manner.

R.12 at 2. The clock stopped on August 12, 2005, when Turner arrived at the Metropolitan Detention Center for the evaluation. The government's only explanation for the delay does not rebut the presumption of unreasonableness for delays that last more than ten days. *See* 18 U.S.C. § 3161(h)(1)(F). In vaguely relying on the "difficulty suffered by the facility and by the United States Marshal Service in effectuating a timely evaluation and transportation to and from the facility," R.30 at 3, the government offers no handhold for rebutting the presumption that it should not take the marshals more than ten days to transport an inmate from a prison to the site of a competency examination. Because the remaining period includes more than thirty days, the Act requires us to dismiss the charges in Turner's original complaint.

The government persists that Turner has forfeited his claim under the Speedy Trial Act. It points to a proposed order that Turner filed with his motion to determine mental competency, which said:

> Pursuant to the Speedy Trial Act provisions of 18 U.S.C. § 3161(h)(1)(A), the time required for trial of the defendant shall be tolled from the date of the instant order until the results of said psychiatric examination are received by

the Court, such period being a delay contemplated by 18 U.S.C. § 3161(h)(1)(A).

R.10-1 at 2.  Because Turner's proposed order purported to exclude all of the time from the issuance of the competency-examination order to the receipt of the examination results, the government says that he may not argue otherwise now.

Yet the government has a forfeiture problem of its own, as it failed to raise this argument below.  That is not its only problem:  Even assuming that the proposed order could constitute a waiver, the Speedy Trial Act does not allow defendants to waive a deadline prospectively.  *See Zedner v. United States*, 547 U.S. 489, 500 (2006).  Unlike many rights, the rights protected by the Speedy Trial Act belong not just to the defendant, but also to the public at large, and "[a]llowing prospective waivers would seriously undermine the Act because there are many cases . . . in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest."  *Id.* at 502. Turner's proposed order did not—it could not by itself—waive his right to object to the indictment delay.

Judicial estoppel is no more helpful to the government.  As an equitable doctrine developed to "protect the integrity of the judicial process," *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation marks omitted), it "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000); *see also Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, No. 08-103, slip op. at 14–15 (Mar. 2, 2010).  But Turner did not make a Speedy Trial Act "argument" below.  The merits of the motion he filed focused on the facts and law relating to Turner's need for a competency hearing; it did not turn on the Act and needed little argument because the government did not oppose it.  *See Zedner*, 547 U.S. at 505 (refusing to apply judicial estoppel and noting that "the Government itself accepted the . . . interpretation without objection").

The language of the proposed order upon which the government focuses also had no relevance to whether Turner was entitled to a competency hearing.  Nor would anyone have mistaken the short paragraph for a fully considered legal position.  In addition to its brevity and its lack of analysis, the passage purports to toll the "time required for *trial* of the

defendant," R.10-1 at 2 (emphasis added), not the time required for *indictment*, *see* 18 U.S.C. § 3161(b), and not for that matter the time required for transportation. And the passage correctly states the "general rule" of § 3161(h)(1)(A), even though it makes no mention of § 3161(h)(1)(F)'s "specific exception" to that rule. *Tinklenberg*, 579 F.3d at 596. No doubt Turner would have done well to give more consideration to the Speedy Trial Act issue before submitting the proposed order. But there was no reason at that point to anticipate the government's conceded "difficulty . . . in effectuating a timely . . . transport to . . . the facility," R.30 at 3, which of course was the ultimate problem and not the problem addressed in the motion.

The government adds that Turner "failed to develop the record with respect to the date on which an institution was designated and the date he was actually transported." U.S. Br. at 25. The government again invokes *Murphy*—this time, a portion reaffirmed by *Tinklenberg*, 579 F.3d at 596 n.2—in which the court held that the ten-day limit could not apply unless the defendant provides evidence of the actual transportation delay. 241 F.3d at 455. The government notes that the June 8 order does not designate any specific institution but commits Turner "to the Federal Medical Center designated by the Bureau of Prisons." R.12 at 1. On this record, the government says, the ten-day clock never started (or at least no evidence shows when it started) and accordingly Turner necessarily cannot establish a violation.

The government reads § 3161(h)(1)(F) too narrowly and *Murphy* too broadly. The statute says nothing about the designation of a specific institution; it refers only to the "transportation of any defendant . . . to and from places of examination or hospitalization," and starts counting days on "the date . . . [of] an order directing such transportation." 18 U.S.C. § 3161(h)(1)(F). The June 8 order "direct[s]" the United States Marshal "to conduct the transportation . . . of the defendant . . . in an appropriate, expeditious manner," R.12 at 2, which qualifies as an "order directing . . . transportation," even if it speaks only of transportation to a Federal Medical Center, not a specific facility.

The government's reading would require either a second judicial order or a separate agency order to trigger § 3161(h)(1)(F). As to the concept of a second judicial order, a court *might* choose to issue one order directing an evaluation, then, once the government has

picked a facility for the defendant's evaluation, issue another order directing the government to transport the defendant there—an approach that might eliminate the countable-delay problems encountered here. *Cf. United States v. McGhee*, 532 F.3d 733, 736–37 (8th Cir. 2008). But we do not read the statute to require a second order to begin the Speedy Trial clock. Here, the court's first order covered evaluation *and* transportation, which satisfies the requirement of an "order directing . . . transportation." And it would be strange to construe the statute to contain a start date that begins, if at all, only when courts do something—issue a second judicial order—that, the government tells us, they rarely do. 1/26/10 U.S. Letter Br. at 4.

The government responds that the infrequency of second judicial orders would not "gut[] § 3161(h)(1)(F)," *id.* at 6, because, even without such an order, we still could start the clock at the start of the defendant's trip or on the date of an agency's internal order to transport Turner. The Seventh Circuit has followed this approach *in the absence* of a judicial order of transportation. *See United States v. Garrett*, 45 F.3d 1135, 1139–40 (7th Cir. 1995). But why consider solutions for a problem—the absence of an order of transportation—that does not exist? In this case, the district court's June 8 order explicitly directed the Marshals Service to transport Turner.

All of this makes Turner's case readily distinguishable from Murphy's. In that case, so far as the court's opinion reveals, there was no order of transportation and no evidence about the date of arrival, nor any evidence of an agency order as in *Garrett*, meaning that the defendant could not prove the start date or the end date. *Murphy*, 241 F.3d at 449. *Murphy*'s conclusion—that the defendant could not succeed for failure of proof, *id.* at 455—thus has no bearing on this case, where Turner has shown both dates.

The government notes that finding a placement for a defendant like Turner can take time and argues that the ten-day limit of § 3161(h)(1)(F) could cause practical difficulties. The first response is that Congress, not this court, set the limit. The second response is that, after a ten-day delay, § 3161(h)(1)(F) establishes a *presumption* of unreasonableness, not a conclusion of unreasonableness. If legitimate problems arise in transporting a defendant, the government legitimately may rebut the presumption. The third response is that the order directing examination need not direct transportation. If the government fears that a

defendant's placement could take some time, it is free to suggest that the court not issue an order directing transportation at that point.   Nothing in the statute forbids giving the government some time (though presumably not unlimited time) to find a placement before issuing an "order directing . . . transportation."  The fourth response is that our holding limits only automatic exclusion under § 3161(h)(1), not the ends-of-justice continuances that courts may grant under § 3161(h)(7).  What the Court said in *Bloate*, in rejecting a similar argument by the government, applies with equal force here:

> This conclusion does not lay "a trap for trial judges" because it limits . . . only automatic exclusions. . . . [A] district court may [still] exclude . . . time under subsection (h)(7) if it grants a continuance for that purpose based on recorded findings "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Subsection (h)(7) provides "[m]uch of the Act's flexibility," *Zedner*, 547 U.S., at 498, and gives district courts "discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs," *id.*, at 499.

Slip. op. at 17.

The government also claims that *Tinklenberg* cannot be reconciled with *Murphy* and that *Murphy*, as the first of the two decisions, should control.  *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001).  *Murphy* stated that § 3161(h)(1)(A)'s general exclusion for time of examination should control a situation like this regardless of the ten-day time limit, 241 F.3d at 455, but *Tinklenberg* reasoned that the statement was "not necessary to the outcome" of *Murphy* and thus did not bind later panels, 579 F.3d at 596 & n.2.  We agree with the government that one *could* read *Murphy*'s statement as a holding, rather than as dicta, making *Murphy*, not *Tinklenberg*, the precedent that binds.  But *Murphy* is not clear on the point.  This is not a situation where the second opinion overlooked the first, *see White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240–41 (6th Cir. 2005), or where the second opinion disregarded the first merely because it disagreed with it, *see Darrah*, 255 F.3d at 310.  Here, the second opinion considered the first one, reasonably found the first opinion not binding and indeed was written by the author of the first opinion.  While the *en banc* court remains free to consider the merits of the *Murphy* approach versus the *Tinklenberg* approach to this question, we think *Tinklenberg* reasonably distinguished *Murphy*.

*Tinklenberg*, it bears adding, is consistent with the majority of courts to consider the issue. Most courts generally agree that "the entire time between the order for psychiatric examination and the date of the competency hearing cannot be excluded, for under § 3161(h)(1)(F) any time over 10 days spent transporting the defendant to his psychiatric examination is considered unreasonable." *United States v. Castle*, 906 F.2d 134, 137 (5th Cir. 1990); *see United States v. Noone*, 913 F.2d 20, 25–26 & n.5 (1st Cir. 1990); *cf. United States v. Collins*, 90 F.3d 1420, 1427 (9th Cir. 1996). Language in one case may suggest that courts should exclude *all* time from the order for a psychiatric examination to the final competency hearing, regardless of how much of that time the defendant spent waiting to be transported to the examination, though the point seems not to have been debated by the parties. *See United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990).

Turner thus has established that the government violated the Speedy Trial Act. But his success on this front gets him only so far on another front—his interest in being let out of prison. First, we can order the dismissal of just two of his seven convictions—for being a felon in possession of a firearm and being a felon in possession of ammunition, *see* 18 U.S.C. § 922(g)—and the order thus affects just the components of his sentence, if any, based on these two convictions. Those were the only charges included in his original complaint, and a speedy indictment violation requires dismissal only of the offenses charged in the original complaint. *See* 18 U.S.C. § 3162(a)(1); *United States v. Nabors*, 901 F.2d 1351, 1355 (6th Cir. 1990). Second, the government may be able to try these charges again, because we remand to the district court to determine, based upon the factors in 18 U.S.C. § 3162(a)(1), whether to dismiss these charges with or without prejudice. *See Zedner*, 547 U.S. at 509.

### III.

#### A.

Turner's other claims fare worse. He argues that the police arrested him without probable cause in violation of the Fourth Amendment and asks us to suppress the drugs, gun and ammunition seized after the arrest. But Turner waived this argument by failing timely to raise it below. Under Rule 12(e) of the Federal Rules of Criminal Procedure, a party waives any motion to suppress that it fails to file by the deadline the district court sets.

Turner never filed a motion to suppress, and the closest thing he did file—a *pro se* "Petition to Dismiss Complaint" that argued the police did not have probable cause to arrest him, R.36—came nine days *after* the relevant filing deadline.

Turner responds that Rule 12(e) allows the district court to relieve a party from the waiver "[f]or good cause," Fed. R. Crim. P. 12(e), which he met by trying to file a motion to suppress before the deadline but that his attorney prevented him from filing. *See* R.34 (moving for a new lawyer because the current lawyer was "not willing to file motions [Turner] ask[ed] him [to]"). But we have rejected this same argument before. *See, e.g.*, *United States v. Nance*, 481 F.3d 882, 885 n.1 (6th Cir. 2007) (refusing to reach merits of suppression motion even where defendant unsuccessfully pressed his counsel to file it). Turner adds that the district court found not only that Turner's *pro se* motion was "filed out of time" but also that it was "without merit on [its] face," R.96 at 13, which amounts to a merits ruling that we may review. But we have rejected this argument before as well. *See, e.g.*, *United States v. Obiukwu*, 17 F.3d 816, 819 (6th Cir. 1994) ("The fact that the district court saw fit to rule on the merits of [the] motion, despite its untimeliness, does not save the defendant from waiver of the grounds stated in the motion.").

Even to the extent that we may review Turner's claim for plain error—and it is not clear that we may, *see United States v. Caldwell*, 518 F.3d 426, 430 (6th Cir. 2008); *see also United States v. Collier*, 246 F. App'x 321, 335–36 (6th Cir. 2007)—we decline to do so here, without the benefit of a suppression hearing below. Given the multiplicity of factors that may give rise to probable cause, *see Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003), or turn an investigative stop into an arrest, *see United States v. Lopez-Arias*, 344 F.3d 623, 627 (6th Cir. 2003), we cannot meaningfully resolve these issues based on this trial testimony alone.

B.

Turner raises several new claims in his reply brief. These claims are forfeited, *see Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 354 (6th Cir. 2009), and meritless to boot.

Turner argues that the jury delivered an inconsistent verdict by convicting him of possessing heroin, ammunition and a firearm but acquitting him of possessing crack cocaine.

But there is nothing inconsistent about this verdict, since it is quite possible to possess one thing and not another, and, "[i]n any event, inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*, 493 U.S. 342, 353–54 (1990).

Turner separately argues that his conviction was based on hearsay, because the government did not produce the ammunition he possessed but relied on witnesses testifying about it, and did not produce the gunshot residue evidence from his gun but also relied on testimony about it. Yet testimony about out-of-court events or objects is not hearsay unless it includes testimony about an out-of-court statement. *See* Fed. R. Evid. 801(c).

Turner also argues that the government's destruction of the ammunition and the gunshot residue evidence violated his due process rights. But one cannot state a due process claim simply by pointing to "the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). Turner offers no theory by which this evidence might have exonerated him—or, for that matter, any tests to which he would subject the evidence—and so this claim fails as well.

## C.

In view of our disposition of Turner's Speedy Trial Act claim, we need not consider his sentencing challenges. The sentence on the two felon-in-possession counts, we recognize, run concurrently with the sentences on the unaltered convictions, making it quite possible that these dismissals will have little, if indeed any, affect on the length of Turner's sentence. But given the complexity of the guidelines calculation underlying Turner's sentence—which took nearly nine pages of transcript to explain—and given the district court's plenary sentencing responsibilities, we will let the district court determine the effect of these dismissals on Turner's sentence in the first instance.

(One side note: We thank counsel for the two parties, who ably represented their competing sides and went above and beyond the call of duty in helping the court to try to sort out the complicated issues raised in this case.)

IV.

For these reasons, (1) we reverse Turner's convictions for being a felon in possession of a firearm and a felon in possession of ammunition; (2) we remand to the district court to determine whether to dismiss those charges with or without prejudice; (3) we affirm Turner's five other convictions; and (4) we vacate Turner's sentence and remand for resentencing.