961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clarence MOORE, Defendant-Appellant.
 No. 90-3787.
 United States Court of Appeals, Sixth Circuit.
 April 22, 1992.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The defendant, Clarence Moore, appeals his convictions for bank robbery. This case was initially heard in May of 1991 upon three issues raised by Moore: (1) whether the district court erred in denying Moore's motion to suppress in-court identification testimony, (2) whether the district court erred in failing to issue findings of fact supporting its denial of Moore's motion to suppress, and (3) whether Moore's right to a speedy trial was violated. In an opinion filed on July 1, 1991, this Court held that the district court erred in failing to issue factual findings supporting its denial of Moore's motion to suppress, because Federal Rule of Criminal Procedure 12(e) mandates that such a ruling issue. United States v. Moore (Moore I), 936 F.2d 287, 289 (6th Cir.1991) (per curiam). We then remanded the case for the district court to comply with our decision, and reserved ruling on the remaining two issues. Id.
 
 
 2
 The district court, on August 19, 1991, filed its factual findings in this case in compliance with Moore I. We now address the remaining issues and affirm the district court on both.
 
 I.
 
 3
 The facts have already been set forth in Moore I, see id. at 287-288, and we will not repeat them here. We will, however, summarize the findings of fact made by the district court on remand.
 
 
 4
 After hearing testimony and examining other evidence offered in the suppression hearing and at trial, the district court found that, of the six witnesses (the four tellers who were robbed at each bank, as well as a nearby teller at the Dollar Bank and a savings counselor at the Public Square branch of Broadview Federal Savings and Loan), five picked a photograph of Moore out of the photograph spread based upon their individual recollections of the person who had robbed the banks at which they were employed in August of 1989. It found further that the in-court identification of Moore by each of the six witnesses was reliable based on various factors. Each of the witnesses had ample time to view the robber and remembered his features. One witness recalled scars on Moore's hands, which do in fact exist; another noticed that his eyes were little and his teeth yellow and stained. The witnesses accurately described the robber immediately after the robberies as being short (around five feet, two to four inches) and heavy or "chubby." Each witness had a chance to look directly at the robber's face, and each identified him in court based upon her memory of the robber at the time of the crime.
 
 II.
 
 5
 The first issue still before the Court is whether the district court erred in denying defendant's motion to suppress the in-court identification testimony. We rule that it did not.
 
 
 6
 Preliminarily, we note that convictions based on in-court eyewitness identifications may be set aside if the pretrial identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). The standard of review for the denial of a motion to suppress identification is the clearly erroneous standard. See United States v. Hamilton, 684 F.2d 380, 383 (6th Cir.), cert. denied, 459 U.S. 976 (1982).
 
 
 7
 Prior to trial, Moore filed a motion asking for voir dire of identification witnesses. An evidentiary hearing was held, at which time the six bank employees testified as to the respective robberies they had witnessed and as to the pretrial identification procedures employed. The evidence established that each employee had been shown a photograph spread of six black males within three weeks of the robbery that each witnessed. Five of the six tellers identified Moore as the person who robbed them. Subsequently, at trial, all of the tellers again identified Moore as the robber.
 
 
 8
 Moore now argues that the photograph spread was unduly suggestive to the extent that it "guaranteed that [he] would be selected as the robber." Brief of Moore at 9. Moore's primary contention is that, immediately after the robberies and prior to viewing the photograph spread, each of the tellers described the robber as being "heavy, fat, chubby, stocky and stout." Id. According to Moore, even a casual view of the photograph spread demands the conclusion that Moore's picture was certain to be selected, because Moore's picture was the only picture of a heavy or chubby individual.
 
 
 9
 Moore also alleges that the agent showing the photograph spread to the six tellers made suggestive statements to at least three of them. Further, Moore contends that he was prejudiced in that, because each of the tellers initialed and dated his picture as they picked it out of the spread, some of the tellers had the benefit of knowing that picture number four, Moore's picture, had been selected earlier. Moore contends that the agent showing the spread should have numbered the photographs differently each time he showed the spread, so as to eliminate any prejudice. Finally, Moore maintains that, even if the above procedures were not impermissibly suggestive standing alone, they were so in combination.
 
 
 10
 The crux of this issue is whether there exists " 'a very substantial likelihood of irreparable misidentification.' " Neil v. Biggers, 409 U.S. 188, 198 (1972) (quoting Simmons, 390 U.S. at 384). The test established in Biggers by which to determine whether the identification procedure was impermissibly suggestive asks "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199; see also United States v. Causey, 834 F.2d 1277, 1286 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). The Biggers Court held that the following factors are to be considered in making this determination:
 
 
 11
 the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 
 
 12
 409 U.S. at 199-200.
 
 
 13
 On balance, we conclude that these factors weigh in favor of the district court's determination. First, the allegedly suggestive statements made to three of the tellers prior to their viewing the photograph spread were not so suggestive as to be impermissibly suggestive. Three of the identification witnesses testified that the agent laid the six photographs out in front of them and asked them, at separate times and in separate places, "if I could pick out the robber," J.A. at 136, "to pick one out, take out the photograph of the person that I thought robbed me," id. at 147-48, and " 'to look at the photographs, and could I identify who I had saw [sic] rob the bank,' " id. at 155 (quoting transcript of prior testimony).
 
 
 14
 Second, the six photographs only depicted the heads of the men; their bodies--heavy, chubby, or otherwise--were not shown. Further, although it is not alone dispositive of this issue, we note the fact that one of the six witnesses failed to identify Moore in the photograph spread, which tends to undermine his argument that this particular spread "guaranteed" that he would be selected. We find that the use of the six pictures chosen for Moore's photograph spread was not impermissibly suggestive.
 
 
 15
 Finally, the fact that the same picture of Moore was used in showing the spread to each of the six tellers did not create substantial prejudice. At least one of the tellers, testified that the pictures in the spread were all face up when presented to her. Id. We may assume, and Moore does not allege otherwise, that the other tellers, as well, viewed the front of the six photographs as opposed to the back. In that case, the initials on the back of the picture would not have been visible to the later witnesses as they chose from among the six. On the record before us, we find that the repeated use of the same picture of Moore was not impermissibly suggestive.
 
 
 16
 Moreover, we find that these factors do not combine to become impermissibly suggestive and that the identifications were reliable under the totality of the circumstances. See Biggers, 409 U.S. at 199. Prior to viewing the spread, each of the six witnesses gave a substantially similar description of the person who robbed the bank at which she worked immediately after that robbery; in each case, Moore fit the description given. Even the teller who could not identify Moore in the photograph spread identified him in court at trial based upon her memory of his features. Additionally, Moore's fingerprint was found on the note left at the Broadview Savings and Loan on Public Square. United States v. DiTomasso, 817 F.2d 201 (2d Cir.1987), held that other evidence which connects a defendant with the crime may properly be considered when assessing reliability under the totality of the circumstances. Id. at 214 & n. 17. See United States ex rel. Kosik v. Napoli, 814 F.2d 1151, 1156-57 (7th Cir.1987) (same); United States v. Bell, 812 F.2d 188, 193 (5th Cir.1987) (same).
 
 
 17
 Each of the identifying witnesses testified that she looked Moore right in the face. Moreover, at least two of the tellers testified that they noticed him from the moment he entered the bank, watched him proceed to a table as he pretended to fill out a deposit slip, and then noticed as he headed toward the teller counters. Id. at 96, 149. One of those two testified that he remained at the table for about three minutes. Id. at 149; cf. Taylor v. Swenson, 458 F.2d 593, 598 (8th Cir.1972) (observing defendant bank robber face to face for three minutes constitutes "an excellent opportunity to observe" the robber). The tellers were able to give detailed, consistent descriptions of their respective robber, indicating that they looked at him long enough to be able to identify him, that they gave him a good degree of attention, and that their descriptions were accurate. Additionally, during the confrontation, each of the tellers, with one exception, was confident in her selection of Moore out of the photograph spread. And the confrontation, taking place three weeks after the robberies, occurred within a reasonable time. See Causey, 834 F.2d at 1286 ("A three to four-month delay between the crime and the identification does not render the identification inherently unreliable.")
 
 
 18
 Review of pretrial identification procedures is necessarily fact intensive: " 'each case must be considered on its own facts, and ... convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " See Biggers, 409 U.S. at 196-95 (quoting Simmons, 390 U.S. at 384). Given the facts as found by the district court, the pretrial identification procedure used to establish that Moore was the robber was not impermissibly suggestive under the Biggers test.
 
 III.
 
 19
 The only remaining issue is whether Moore's right to a speedy trial was violated. We conclude that it was not.
 
 
 20
 Moore was originally indicted on September 6, 1989 and charged with two counts of bank robbery. These robberies were alleged to have occurred on August 11 and August 28, 1989. Proceedings on this indictment were delayed pending the completion of a mental examination to determine Moore's competency. The motion for the examination was filed by the government on September 5, 1989. On January 2, 1990, the examination was completed and Moore appeared for arraignment before a magistrate. He pleaded not guilty. A superseding indictment was returned on January 23, 1990. Counts one and four of the superseding indictment were the same as the two counts in the original indictment. Arraignment on the second indictment occurred on February 5, 1990 and trial was set for April 4, 1990.
 
 
 21
 The statute which quantifies the right to speedy trials reads:
 
 
 22
 In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate on a complaint, the trial shall commence within seventy days from the date of such consent.
 
 
 23
 18 U.S.C. § 3161(c)(1) (1988) (emphasis added). Moore relies upon the language contained in § 3161 and the Supreme Court's opinion in United States v. Rojas-Contreras, 474 U.S. 231, 234-35 (1985). There, the Court held that a new thirty-day preparation period under § 3161(c)(2) of the Speedy Trial Act, does not begin to run anew from the date of filing of a superseding indictment. Moore argues, correctly, that the starting point for computing time, for purposes of the Speedy Trial Act, with respect to counts one and four of the superseding indictment--counts one and two of the original indictment--is September 6, 1989, the date of filing of the original indictment. Moore concedes that some excludable delay periods, as provided for in 18 U.S.C. § 3161(h) exist in this case. He contends, however, that deducting those periods would still leave a period of more than seventy days between September 6, 1989 and the date of trial, May 14, 1990.
 
 
 24
 The government, on the other hand, argues that, under 18 U.S.C. § 3161(h)(1)(F) and the Supreme Court's decision in Henderson v. United States, 476 U.S. 321 (1986), the delay from September 6, 1989 to April 12, 1990 is excludable delay. Section 3161(h)(1)(F) provides that excludable delay is "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). In Henderson, the Supreme Court held that delay falling within § 3161(h)(1)(F) need not be "reasonably necessary." 476 U.S. at 328-29.
 
 
 25
 The motion for psychiatric examination of Moore was filed on September 5, 1989 and granted on the same day. The exam was completed on January 2, 1990, and Moore was arraigned. The defense then arranged to conduct its own examination of Moore's mental health, in anticipation of relying on an insanity defense. On March 12, Moore filed a motion to rely on that defense. The conclusion of the psychiatric question occurred on April 12, 1990 when, after a competency hearing the court declared Moore competent to stand trial. Thus, this entire period is excludable under § 3161(h)(1)(F). Accordingly, the district court did not err.
 
 
 26
 Our decision is supported by 18 U.S.C. § 3161(h)(8)(A) as well. The trial judge granted a continuance pursuant to that section "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The judge granted the continuance "in order to afford the parties ample time to prepare for trial" in light of the superseding indictment. J.A. at 49. This reason for the judge's granting the continuance is recorded in his order overruling defendant's motion to dismiss, id. at 45-50, as required by statute, 18 U.S.C. § 3161(h)(8)(A) (providing that the court must "set [ ] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh" a defendant's speedy trial interest). The decision whether to grant such a continuance is within the discretion of the district court. United States v. Monger, 879 F.2d 218, 221 (6th Cir.1989). Pursuant to that standard of review, we find that the district court's actions were proper under the statute and did not violate Moore's right to a speedy trial.
 
 IV.
 
 27
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation