*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0323p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

             *v.*

JASON LOUIS TINKLENBERG,
             *Defendant-Appellant.*

> Nos. 06-2646; 08-1765

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 05-00239-001—Richard A. Enslen, District Judge;
Paul Lewis Maloney, Chief District Judge.

Argued: June 19, 2009

Decided and Filed: September 3, 2009

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Julie Ann Woods, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Kevin M. Schad, SCHAD & SCHAD, Lebanon, Ohio, for Appellant. Julie Ann Woods, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. Jason Louis Tinklenberg, Kalamazoo, Michigan, pro se.

CLAY, J., delivered the opinion of the court, in which KEITH, J., joined. GIBBONS, J. (pp. 17-20), delivered a separate concurring opinion.

—————————————

## OPINION

—————————————

CLAY, Circuit Judge. Defendant-Appellant Jason Louis Tinklenberg ("Tinklenberg") appeals his conviction and sentence after a jury found him guilty of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and two counts of possessing material to manufacture methamphetamine, in violation of 21 U.S.C.

§ 843. On appeal, Tinklenberg contends that the district court improperly denied his motion to dismiss the indictment, because his trial began after the deadline imposed by the Speedy Trial Act. Tinklenberg also challenges the district court's subsequent finding that he violated the terms of his supervised release, as well as the reasonableness of his ensuing prison sentence. Because Tinklenberg's trial violated the Speedy Trial Act, we **REVERSE** Tinklenberg's conviction and **REMAND** with instructions to dismiss his indictment with prejudice.

### BACKGROUND

On October 20, 2005, the government charged Tinklenberg in an indictment in the Western District of Michigan with one count of being a felon in possession of a firearm and two counts of possessing items used to manufacture methamphetamine. At Tinklenberg's initial appearance on October 31, 2005, a magistrate judge ordered him detained, and scheduled an arraignment hearing for November 2, 2005. On November 2, 2005, prior to his scheduled arraignment, Tinklenberg moved to receive a psychological evaluation for competency to stand trial. That day, instead of arraigning Tinklenberg, the magistrate judge granted Tinklenberg's motion, committing Tinklenberg "for a period not to exceed 30 days for placement in an appropriate facility" for psychological evaluation. (ROA at 4, 36.) Tinklenberg was transported to the Metropolitan Correctional Center in Chicago (the "MCC") for testing.

On December 16, 2005, the government requested a thirty day extension of time to complete Tinklenberg's psychological evaluation, stating in its motion that the prison psychiatrist responsible for evaluating Tinklenberg had reported that Tinklenberg "was not cooperating in the effort to evaluate him." (ROA at 38-39.) On December 20, 2005, the district court granted the government's request for an extension, and ordered that Tinklenberg's trial be held in abeyance until his psychological evaluation was completed. On December 28, 2005, the magistrate judge set a deadline of February 13, 2006 for completion of the testing. On February 10, 2006, the government requested a second extension of time, until March 13, 2006, for completion of Tinklenberg's evaluation. The government's request stated that the psychiatrist at the MCC had said that he needed an additional four weeks to complete the evaluation, but did not explain the cause of the further

delay.  On February 17, 2006, the magistrate judge granted the government's second request and set March 13, 2006 as the new deadline for completion of Tinklenberg's evaluation.

On March 20, 2006, the court received the MCC's psychiatric report on Tinklenberg. Enclosed with the MCC's evaluation was a cover letter from the warden of the MCC, which stated that Tinklenberg "was designated to the [MCC] on November 10, 2005, and arrived at the Institution on November 30, 2005."  (ROA at 147.)  On March 22, 2006, the magistrate judge held a competency hearing, and by order dated March 23, 2006, found Tinklenberg competent to stand trial.  On March 23, 2006, the magistrate judge also arraigned Tinklenberg, who pled not guilty to all three counts against him.  By order dated March 27, 2006, the district court set the case down for trial on May 30, 2006.

On March 29, 2006, Tinklenberg filed an *ex parte* petition to receive an independent competency evaluation.  On April 17, 2006, the magistrate judge granted Tinklenberg's petition, ordered the independent evaluator to submit his report to the court by May 15, 2006, and stated that "the period of time until Defendant's competency is determined shall be excluded time for the purposes of the Speedy Trial Act[.]"  (ROA at 53-54.)

On April 26, 2006, Tinklenberg filed a pro se motion for new counsel, and on May 9, 2006, Tinklenberg's counsel moved to withdraw as Tinklenberg's attorney.  Counsel's motion indicated that Tinklenberg would not cooperate with the independent evaluator.  The district court once again adjourned the trial date and referred the motions by Tinklenberg and his counsel to the magistrate judge to resolve.  On June 7, 2006, the magistrate judge held a hearing on the motions, and, on June 9, 2006, ordered new counsel appointed.  With respect to Tinklenberg's competency evaluation, though the magistrate judge's June 9, 2006 order is somewhat ambiguous, it appeared to find Tinklenberg competent, noting that the independent evaluator had concluded as much and that Tinklenberg now opposed the evaluation.  The district court then scheduled Tinklenberg's trial for August 15, 2006.  On July 25, 2006, the case was reassigned to a new district judge, and the new judge issued an order moving the trial date forward one day, to August 14, 2006.

On August 1, 2006, the government requested permission to conduct a video deposition of a witness.  On August 3, 2006, the district court granted the government's motion, but ordered that "[t]he parties shall schedule said deposition posthaste so as not to

delay trial." (ROA at 115.) On August 8, 2006, the government filed a request to bring two guns into the courtroom during the trial as evidence, a request the court granted on August 10, 2006.

On August 11, 2006, Tinklenberg moved to dismiss his indictment, claiming that the time required for trying him pursuant to the Speedy Trial Act had lapsed. On August 14, 2006, the morning of trial, the district court denied Tinklenberg's motion, finding that only sixty-nine days had lapsed for the purposes of the Speedy Trial Act.

Tinklenberg's trial began on August 14, 2006, and on August 16, 2006, the jury convicted Tinklenberg on all three counts. On December 13, 2006, the district court sentenced Tinklenberg to thirty-three months of imprisonment, followed by three years of supervised release. On December 18, 2006, Tinklenberg filed a notice of appeal of his conviction and sentence.

On April 21, 2008, while the appeal of his conviction and sentence was still pending, Tinklenberg was released from prison. On April 28, 2008, Tinklenberg was re-arrested for violating the terms of his supervised release by testing positive for cocaine. On May 16, 2008, the district court held an evidentiary hearing, at which a probation officer testified that on April 23, 2008, he took a urine sample from Tinklenberg that tested positive for cocaine. The government introduced into evidence the lab report showing the test results and Tinklenberg's signed statement admitting to cocaine use. On May 30, 2008, the district court found that Tinklenberg had violated the terms of his supervised release by using cocaine, and sentenced Tinklenberg to fourteen additional months in prison. Tinklenberg timely appealed the additional sentence.

Tinklenberg's challenge to his initial conviction, and his appeals of the finding that he violated his supervised release and the ensuing sentence, were consolidated on appeal.

**DISCUSSION**

**I.          Speedy Trial Act Calculations**

The Speedy Trial Act, 18 U.S.C. §§ 3161-74, mandates that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the

filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." § 3161(c)(1). The Speedy Trial Act allows exclusions of time from the seventy day rule, including, *inter alia*,

> [a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant; . . . (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; . . . [and] (F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable[.]

§ 3161(h)(1). The defendant bears the burden of proof to show a violation warranting dismissal. § 3162(a)(2). This Court "reviews the district court's interpretation of the Speedy Trial Act *de novo* and its factual findings for clear error." *United States v. Marks*, 209 F.3d 577, 586 (6th Cir. 2000).

Tinklenberg was indicted on October 20, 2005 and his trial began 287 days later, on August 14, 2006. The district court found that only sixty-nine non-excludable days lapsed during the interval.

### A.　　The Start of the Speedy Trial Clock

The district court found that the Speedy Trial clock began to run on October 31, 2005, the date that Tinklenberg first appeared after his October 20, 2005 indictment. The government argues that in cases such as this one–where an indictment is filed and the defendant subsequently appears, but does not plead not guilty until a later date–the seventy day period does not begin until the not guilty plea. However, this Court has held that where the defendant's not guilty plea follows his indictment and initial appearance, whichever of the indictment or initial appearance that occurs last starts the seventy day period. *United States v. Mentz*, 840 F.2d 315, 325-26 (6th Cir. 1988).

Moreover, the plain language of the statute supports starting the clock from the date Tinklenberg initially appeared. "*In any case in which a plea of not guilty is entered*, the trial of a defendant . . . shall commence within seventy days from the filing date (and making public) of the information or indictment, *or from the date the defendant has appeared* before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1) (emphasis added). Thus, the statute refers to the defendant's plea in setting forth the general *precondition* that the Speedy Trial Act's requirements are only relevant in cases in which the defendant proceeds to trial; otherwise, the statute make no reference to the not guilty plea. *See id.* However, the statute uses different language, *i.e.*, "the date the defendant has appeared," as the time the seventy day period begins, if the indictment has already been filed. *Id.* The well-established rule that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion[,]" *Russello v. United States*, 464 U.S. 16, 23 (1983), applies even more clearly where Congress uses contrasting language in the same sentence. Thus, under the plain language of the statute, "the date the defendant has appeared," and not the defendant's "plea of not guilty," begins the seventy day period.

The government cites *United States v. O'Dell*, 154 F.3d 358, 360-62 (6th Cir. 1998), to support its opposing position that if the initial appearance occurs before a defendant's not guilty plea, the date of the not guilty plea is the event that starts the clock. However, *O'Dell* is inapposite. In *O'Dell*, the defendant initially agreed to plead guilty to manufacturing marijuana pursuant to an information before an indictment was ever filed, and then subsequently withdrew his plea. 154 F.3d at 359. The government then indicted him for the first time, and he pled not guilty. *Id.* at 359-60. This Court held that the defendant's indictment represented an entirely new case against the defendant, and that the defendant's initial appearance after that indictment, when he pled not guilty, triggered the Speedy Trial clock. *Id.* at 362. This Court found that the clock never started in the defendant's earlier case, because he never entered a not guilty plea in the earlier case. Thus, *O'Dell* stands only for the proposition that the Speedy Trial Act does not apply to a case in which the defendant never pleads not guilty. Although this Court opined that the Speedy Trial Act "requires a not guilty plea to begin the clock running," that statement was irrelevant to the outcome of

the case and was therefore *dicta*.  *See United States v. Lopez-Valenzuela*, 511 F.3d 487, 490 (5th Cir. 2007) (concluding that this Court's finding in *O'Dell* that a defendant's not guilty plea starts the seventy day period was *dicta*).

In short, although the Speedy Trial Act applies only to cases in which the defendant has entered a not guilty plea, the initial appearance after the indictment is the event that triggers the seventy day period.  Accordingly, Tinklenberg's initial appearance on October 31, 2005 triggered the Speedy Trial Act's seventy day period.  Following Tinklenberg's initial appearance, one day, November 1, 2005, lapsed before Tinklenberg moved for, and the court granted, a competency evaluation on November 2, 2005.  The Speedy Trial clock thereby stopped after one day had lapsed.

**B.     Days Pretrial Motions are Filed and Decided**

This Court has been somewhat inconsistent with respect to whether the day a pretrial motion is filed and the day the court disposes of it should be excluded from the Speedy Trial period.  *See, e.g., United States v. Crawford*, 982 F.2d 199, 203-04 (6th Cir. 1993) (days on which motion is filed and resolved are excluded); *United States v. Thomas*, 49 F.3d 253, 256 (6th Cir. 1995) (day on which motion is filed is excluded, but day on which motion is resolved is included).  However, the plain language of the statute mandates excluding the days on which motions are filed and resolved.  *See* § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, *from* the filing of the motion *through* the conclusion of the hearing on, or other prompt disposition of, such motion") (emphasis added).  Moreover, the vast majority of appellate courts exclude the dates on which motions are filed and resolved.  *See, e.g., United States v. Fonseca*, 435 F.3d 369, 372 (D.C. Cir. 2006); *United States v. Papaleo*, 853 F.2d 16, 21 (1st Cir. 1988); *United States v. Oberoi*, 547 F.3d 436, 454 (2d Cir. 2008); *Gov't of Virgin Islands v. Duberry*, 923 F.2d 317, 320 n.8 (3d Cir. 1991); *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996); *United States v. Johnson*, 29 F.3d 940, 943 n.4 (5th Cir. 1994); *United States v. Daychild*, 357 F.3d 1082, 1093 (9th Cir. 2004); *United States v. Yunis*, 723 F.2d 795, 797 (11th Cir. 1984).

Thus, we will exclude from the time computation the dates pretrial motions were filed and resolved.  In this case, the only two pretrial motions relevant to the Speedy Trial

Act were the two competency evaluations.[1]  Under § 3161(h)(1)(A), delays caused by competency evaluations are treated as a special category of excluded time, which will be discussed in detail below.  However, § 3161(h)(1)(A) does not specifically instruct whether to count the days on which motions for such evaluations are made and resolved.  *See* § 3161(h)(1)(A) (stating only that "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" is excluded).  Because the two incompetency evaluations were commenced by way of pretrial motions raised by Tinklenberg, we will exclude the days those motions were raised and resolved from the seventy day period, just as we would in the case of any other pretrial motion.

### C.     Competency Evaluations

The district court excluded from the Speedy Trial clock all of the days from November 2, 2005 to March 23, 2006, and from March 29, 2006 to June 9, 2006, because Tinklenberg's two competency determinations were pending during those periods.  On appeal, Tinklenberg argues that 18 U.S.C. § 4247(b), which generally sets the rules by which courts may commit defendants for psychiatric evaluations and limits the period a defendant may be committed for evaluation to thirty days, should be applied to limit the time excludable under the Speedy Trial Act to thirty days for Tinklenberg's competency evaluations.  Pursuant to § 4247(b), "[f]or the purposes of an examination pursuant to [a court] order, . . . the court may commit the person to be examined for a reasonable period, but not to exceed thirty days[.]"  However, this Court and "[e]very court that has decided this issue ha[ve] concluded that § 4247(b) does not limit the time period for a competency examination with respect to calculations under the Speedy Trial Act."  *United States v. Murphy*, 241 F.3d 447, 456 (6th Cir. 2001).  Accordingly, Tinklenberg's argument fails.

---

[1]Tinklenberg's motion for a new counsel and his counsel's motion to withdraw did not have any impact on the Speedy Trial clock because both were filed after Tinklenberg moved for an independent competency evaluation on March 29, 2006, and were resolved on June 9, 2006, the same day as the court ruled on the competency motion. The only other pretrial motions at issue are the three pretrial motions filed in August 2006, during the two weeks prior to trial, but those motions do not create excludable time for the reasons discussed in Section I.D below.

Of more substance is Tinklenberg's argument that the Speedy Trial Act limits to ten days the time excludable for the transportation of a defendant to and from the location of his competency evaluation. Although 18 U.S.C. § 3161(h)(1)(A) appears to exclude all time during which a defendant's competency evaluation and determination is pending, § 3161(h)(1)(F) provides that any delay caused by the transportation of a defendant "to and from places of examination or hospitalization" that is longer than ten days is "presumed to be unreasonable." Whether the ten day limit in § 3161(h)(1)(F) applies to the time in which a defendant is transported to a place of examination pursuant to a court's competency evaluation order appears to be a matter of first impression for this Court.[2] The few other appellate courts to have ruled on the issue are split: the First and Fifth Circuits have held that an unreasonable delay in the transportation of the defendant for a competency determination is not excludable, *see United States v. Noone*, 913 F.2d 20, 25-26 (1st Cir. 1990) and *United States v. Castle*, 906 F.2d 134, 137 (5th Cir. 1990), while the Second Circuit has held that *any* delay associated with a competency evaluation from the date of the order directing the evaluation until completion of the competency hearing, including delay from transporting a defendant for the evaluation, is excludable under § 3161(h)(1)(A), *see United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990).

We hold that a delay in transporting a defendant to a mental competency examination beyond the ten day limit imposed by § 3161(h)(1)(F) is presumptively unreasonable, and in the absence of rebutting evidence to explain the additional delay, this extra time is not excludable. Reading § 3161(h)(1)(A) to allow unlimited time for transporting a defendant to a place of examination, as the Second Circuit did in *Vasquez*, would create an internal conflict in the statute, since § 3161(h)(1)(F) expressly limits

---

[2]The government and the concurring opinion both cite *Murphy*, arguing that this Court has already held that any delay in transporting a defendant for a mental competency examination is excludable, notwithstanding the ten day limit imposed by § 3161(h)(1)(F). However, the Court in *Murphy* did not address the interplay between § 3161(h)(1)(A) and § 3161(h)(1)(F), because the defendant's failure to submit any evidence of the duration of his transportation in support of his argument for a ten day limitation allowed this Court to reject the defendant's argument before reaching its merits. 241 F.3d at 455. After rejecting the claim for lack of evidence, we stated, "[w]e also conclude that Defendant's contention is without merit." *Id.* However, that statement was not necessary to the outcome, was not accompanied by any interpretation of the statute, and was followed by a citation to *Noone*, whose interpretation of the statutes we follow today. *Id.* at 455-56.

the reasonableness of the transportation period to ten days. *See Noone*, 913 F.2d at 25 n.5 (finding that allowing unlimited excluded time for transporting defendants to competency evaluation "would render mere surplusage the specific reference in [§ 3161(h)(1)(F)] to transportation 'to and from places of examination or hospitalization'"). The only way to avoid conflict between § 3161(h)(1)(A) and § 3161(h)(1)(F) is to read § 3161(h)(1)(F) as a specific exception to the general rule announced in § 3161(h)(1)(A): *i.e.*, all delays caused by proceedings to determine a defendant's competency are excluded, except for the time during which the defendant is supposed to be in transit, which is presumptively unreasonable if longer than ten days. *See United Steelworkers of America, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 202 (6th Cir. 1988) ("[W]e are bound to construe statutes in such a way as to avoid internal conflicts whenever possible[.]").[3]

On November 10, 2005, Tinklenberg was designated to the MCC in Chicago, but did not arrive there until November 30, 2005. Under this Court's precedent, weekends and federal holidays are not included when calculating the ten day time period in which the transportation delays are excluded. *United States v. Bond*, 956 F.2d 628, 632 (6th Cir. 1992) (citing Federal Rule of Criminal Procedure 45(a)). Thus, although twenty calendar days passed until Tinklenberg arrived at the MCC on November 30, 2005, only two non-excludable days lapsed during that time: ten days were excludable under § 3161(h)(1)(F), six days were Saturdays or Sundays, and two days were federal holidays. Accordingly, by the time Tinklenberg arrived at MCC in Chicago, two more non-excludable days had lapsed, for a total of three non-excludable days to date.

The period from November 30, 2005 until March 23, 2006, the day the magistrate judge found Tinklenberg competent, was continuously excludable time, pursuant to § 3161(h)(1)(A). *See Murphy*, 241 F.3d at 456. The next five days were not excludable, bringing the total number of non-excludable days to eight. On March 29, 2006,

---

[3]The concurring opinion states that the phrase "to or from places of examination" in § 3161(h)(1)(F) "addresses more generally those situations in which a defendant may need to be transported to the hospital for testing," Concurring Op. at 19, but it is surely a leap to read "places of examination" to exclude competency evaluations–the very type of "examination" that a defendant most typically undergoes prior to trial.

excludable time began again, because Tinklenberg filed a motion for an independent psychiatric evaluation on that day.  *See* § 3161(h)(1)(A).  On April 17, 2006, the magistrate judge granted Tinklenberg's motion and ordered the independent competency evaluation.  Time was therefore excludable until June 9, 2006, when the court again found Tinklenberg competent. From June 10, 2006 through July 31, 2006, fifty-two non-excludable days lapsed, bringing the total number of non-excludable days to sixty.

### D.    Motions That Do Not Delay Trial

Between August 1, 2006 and August 14, 2006, the date of trial, three motions were filed: on August 1, the government requested permission to conduct a video deposition of a witness, and the court granted the motion on August 3; on August 8, 2006, the government filed a request to bring two guns into the courtroom during the trial as evidence, a request the court granted on August 10, 2006; and on August 11, 2006, Tinklenberg moved to dismiss his indictment, with the district court denying the motion on August 14, prior to the commencement of trial.  All of these motions were resolved without a hearing, and without any motion or order to delay the start of trial. Yet in its calculations, the district court excluded from the Speedy Trial period the days in which each motion was filed, pending and resolved.

As previously noted, any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[]" is excluded from the seventy day Speedy Trial period.  18 U.S.C. § 3161(h)(1)(D).  Thus, this Court has held that "[i]f a motion requires a hearing, the entire time from the filing of the motion through the date of the hearing is excludable." *United States v. Gardner*, 488 F.3d 700, 717 (6th Cir. 2007).

However, this Court has not addressed whether a pretrial motion that does not delay trial, and does not have the potential to cause any such delay, is nevertheless excludable.  Every circuit to have addressed the issue appears to have held that the filing of any pretrial motion stops the Speedy Trial clock, regardless of whether the motion has any impact on the trial's start date.  *See, e.g., United States v. Wilson*, 835 F.2d 1440, 1443 (D.C. Cir. 1987); *United States v. Hood*, 469 F.3d 7, 10 (1st Cir. 2006); *United*

*States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993); *United States v. Dorlouis*, 107 F.3d 248, 253-54 (4th Cir. 1997); *United States v. Montoya*, 827 F.2d 143, 151 (7th Cir. 1987); *United States v. Titlbach*, 339 F.3d 692, 698 (8th Cir. 2003); *United States v. Vo*, 413 F.3d 1010, 1015 (9th Cir. 2008); *United States v. Vogl*, 374 F.3d 976, 985 (10th Cir. 2004); *United States v. Miles*, 290 F.3d 1341, 1350 (11th Cir. 2002). Citing this consensus, the government argues that nine days should be excluded in August as a result of the three pretrial motions filed. We disagree, and hold that a pretrial motion must actually cause a delay, or the expectation of a delay, of trial in order to create excludable time.

First, "the starting point in any case involving the meaning of a statute[] is the language of the statute itself." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 (1979). The statute provides that "*[t]he following periods of delay* shall be excluded[,]" and then includes among the list of periods of delay "[a]ny period of delay *resulting from* other proceedings concerning the defendant, including but not limited to" eight different causes of "*delay*[.]" § 3161(h)(1) (emphasis added). One of these excluded delays is "delay *resulting from* any pretrial motion[.]" § 3161(h)(1)(D) (emphasis added). Thus, the statutory exclusion for pretrial motions contained in § 3161(h)(1)(D) and its two prefacatory clauses includes the word "delay" three different times, and twice states that the delay must "result from" the pretrial motion. There is no conceivable way to read this language other than to require a delay to *result* from any pretrial motion before excludable time occurs. Most of the courts that have read this delay requirement out of the statute have not examined the language of the statute closely, although the Eleventh Circuit attempted to explain the statutory basis for its interpretation as follows: "Although . . . [§ 3161(h)(1)(D)] reads 'delay resulting from,' the beginning of Section 3161(h) states that '[t]he following periods of delay shall be excluded . . .' The latter phrase clearly indicates that each period listed in Section 3161(h) automatically is a period of delay." *United States v. Stafford*, 697 F.2d 1368, 1371 (11th Cir. 1983). While the Eleventh Circuit was correct that "each period listed in Section 3161(h) automatically is a period of delay," the court failed to recognize that the "period" listed in § 3161(h)(1)(D) was not "any pretrial motion," but rather, "delay

resulting from any pretrial motion[.]" In short, the argument set forth in *Stafford* simply reads words out of the statute to reach its holding. *See Bailey v. United States*, 516 U.S. 137, 146 (1995) (noting that statutes are to be read so as to give each word a "particular, nonsuperfluous meaning").

Because the statute is clear, examining the legislative history is unnecessary. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (quotations and citations omitted). Nevertheless, it is noteworthy that the legislative history that our sister circuits have cited to support reading the delay requirement out of the statute does not actually support such a reading. Several of these courts have pointed to Congress' rejection of a proposed amendment in 1979 that would have eliminated the automatic exclusions of § 3161(h) in favor of giving judges the discretion to decide whether a particular proceeding warranted excluding time. *See, e.g., United States v. Novak*, 715 F.2d 810, 813 (3d Cir. 1983); *see also Stafford*, 697 F.2d at 1371; *Montoya*, 827 F.2d at 151. Yet Congress' rejection of judicial *discretion* in determining whether an exclusion should apply was not a rejection of the entire delay requirement connected to pretrial motions. Viewing Congress' rejection of a proposed amendment to statutory language as somehow showing an intent to move away from the plain meaning of the statute would be nonsensical; if anything, Congress' rejection of the amendment showed its contentment with the plain language itself. Since Congress left the myriad references to delay in the statute, its intent could only have been that where a pretrial motion or any of the other proceedings listed in § 3161(h) *causes delay*, an exclusion of time is automatic, regardless of the delay's length or reason.

Several courts have also cited the Supreme Court's decision in *Henderson v. United States*, 476 U.S. 321 (1986), as consistent with the proposition that all pretrial motions trigger excluded time, regardless of whether they actually cause delay. *See, e.g., United States v. Parker*, 30 F.3d 542, 549 (4th Cir. 1994); *Vogl*, 374 F.3d at 985. Yet

*Henderson* held only that under the statute, the time between the filing of a motion and the conclusion of the hearing on that motion is excluded "whether or not a delay in holding that hearing is reasonably necessary." 476 U.S. at 330. In other words, any delay that occurs during the pendency of a pretrial motion, regardless of whether the delay could have been avoided or was due to the court's own inefficiency, is excluded. *Id.* at 326-27. *Henderson* did not address whether time is excluded when no delay occurs at all, and therefore, offers no support for the flawed consensus established by other appellate courts.

Thus, in the absence of any binding precedent to the contrary, this Court will remain faithful to the statutory language and interpret 18 U.S.C. § 3161(h)(1)(D) as excluding the time in which pretrial motions are filed and pending only if they could possibly cause any delay of trial. None of the August 2006 motions caused any delay of the trial, or even threatened to delay the trial. The trial began on August 14, 2006, the date that had been scheduled before the three August motions were filed. Neither the parties nor the district court expressed any intent to delay the trial in response to any of these three motions. Upon the government's filing of its motion on August 1, 2006 to depose a witness by video, the court even ordered that "[t]he parties shall schedule said deposition posthaste so as not to delay trial." (ROA at 115.) In fact, the trial actually began one day *earlier* than the August 15, 2006 trial date the court originally set at the time of its second competency determination.

Excluding time for mundane pretrial motions to allow a gun into the courtroom as evidence and depose a witness by video would frustrate the purpose of the Speedy Trial Act. In the days immediately prior to trial, a litany of evidentiary motions are filed; there is no evidence that Congress intended to eliminate those days from Speedy Trial Act calculations, or intended the government to be able to avoid its responsibility to conduct a timely prosecution simply by filing a flurry of evidentiary motions before trial. Tinklenberg's motion to dismiss, filed on the last business day before trial, did not cause or threaten to cause any delay either; the district court denied the motion the morning of the trial, and the parties proceeded immediately into *voir dire* that morning. In light of

the obvious understanding of the parties and the court that the motions filed just before trial would not affect the trial schedule, we will include all thirteen days in August prior to trial in the Speedy Trial Act calculation.[4]

Including these thirteen days, a total of seventy-three non-excludable days lapsed prior to the start of Tinklenberg's trial on August 14, 2006. The Speedy Trial Act was therefore violated, and the district court's denial of Tinklenberg's motion to dismiss is reversed.

## II.     Disposition

If a defendant is not tried within the required time limit, "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). "The Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other." *United States v. Robinson*, 389 F.3d 582, 586 (6th Cir. 2004). However, the statute does mandate that, "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." § 3162(a)(2).

An analysis of these factors leads us to conclude that Tinklenberg's case should be dismissed with prejudice. To be sure, the first two factors point to dismissal without prejudice. This Court has previously held that one of Tinklenberg's offenses, being a felon in possession of a firearm, is a serious offense favoring dismissal without prejudice. *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002). There is no evidence that the delay was due to any bad faith on the part of the government, and the defendant's trial began just three days after the seventy day Speedy Trial period expired.

---

[4]The concurring opinion argues that Tinklenberg did not raise this issue before the district court or on appeal. However, Tinklenberg unquestionably asked both this Court and the court below to count the number of days that had lapsed for the purposes of the Speedy Trial Act; therefore, Tinklenberg adequately preserved the overarching issue presented by this appeal.

*See United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000) (finding that absence of prosecutorial bad faith, or of evidence that prosecutor tried to take advantage of delay, was factor supporting dismissal without prejudice); *Carnes*, 309 F.3d at 957 (exceeding of seventy day limit by only eight days supported dismissal without prejudice). However, a reprosecution in this case would nevertheless be contrary to the administration of justice because Tinklenberg has already served the entirety of his sentence, as well as his sentence for violating his supervised release, for which he should have been released in July 2009 at the latest.

"In cases where the district court fails to set forth any findings, the appropriate remedy would ordinarily be a remand to the court with instructions to provide findings that are adequate." *Robinson*, 389 F.3d at 588. Yet "'[w]hile the decision is generally the trial court's in the first instance, remand for a hearing is not required if the answer is so clear that no purpose would be served by a remand.'" *Id.* (quoting *United States v. Pasquale*, 25 F.3d 948, 952 (10th Cir. 1994)). This is just such a case. Because no purpose would be served by retrying Tinklenberg for the offenses for which he has already been punished in full, there is no reason to require the district court to hold a hearing on the issue. We will therefore remand, but with instructions that the district court dismiss the case with prejudice.

**III.    Violation of Supervised Release**

Tinklenberg appeals the district court's finding that he violated his supervised release, and further appeals the reasonableness of his fourteen month sentence for the violation. Because his case will be dismissed with prejudice, we dismiss these issues as moot.

**CONCLUSION**

For the reasons set forth above, we **REVERSE** the district court's denial of Tinklenberg's motion to dismiss, and **REMAND** with instructions that the district court dismiss the indictment with prejudice. Tinklenberg's appeals of the finding that he violated his supervised release and his resulting sentence are **DISMISSED** as moot.

―――――――――――――――

**CONCURRENCE**

―――――――――――――――

JULIA SMITH GIBBONS, Circuit Judge, concurring.   I agree that Jason Tinklenberg's trial violated the Speedy Trial Act and concur in all of the majority opinion except for Part I.C.  I write separately to clarify my views on several of the difficult issues presented.

First, I agree with the majority that the plain language of § 3161(h)(1)(D) requires us to exclude from the Speedy Trial Act clock the day on which a motion is filed.  *See* 18 U.S.C. § 3161(h)(1)(D) (excluding "delay resulting from any pretrial motion, *from* the filing of the motion" (emphasis added)).  To the extent that our case law on this point conflicts, the earlier in time disposition controls because a published opinion of this court is binding on subsequent panels.  *See United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008).  The earliest case I have located, *United States v. Richmond*, 735 F.2d 208, 212 (6th Cir. 1984), held that the day on which a motion is made is "automatically excludable."  *Richmond* is both consistent with the statutory language and, absent any prior published opinion of this court to the contrary, controlling.  In light of *Richmond*, I concur in the majority's conclusion that the day on which a motion is filed is excludable.

I disagree, however, with the majority's conclusion regarding delays in transportation time to and from a mental competency examination.  The Speedy Trial Act requires that a defendant be brought to trial within seventy days, *see* 18 U.S.C. § 3161(c)(1), subject to certain excludable periods.  One such excludable period is any period of "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant."  18 U.S.C. § 3161(h)(1)(A).  Consequently, all "time associated with mental competency examinations [is] excluded from the Speedy Trial clock."  *United States v. Murphy*, 241 F.3d 447, 455-56 (6th Cir. 2001); *see also Henderson v. United States*, 476 U.S. 321, 327 (1986).  Here, the period from November 2, 2005, through March 23, 2006, was excludable pursuant to

§ 3161(h)(1)(A).  Notwithstanding the plain language of § 3161(h)(1)(A), however, the majority concludes that § 3161(h)(1)(F) limits the amount of excludable time spent in transportation to a mental competency examination.  (Maj. Op. at 9.)  I respectfully disagree.  Section 3161(h)(1)(F) provides that any "delay [in excess of ten days] resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization . . . shall be presumed to be unreasonable."  As is clear from the language of § 3161(h)(1)(F), that provision does not speak to competency proceedings.  Rather, it addresses more generally those situations in which a defendant may need to be transported to the hospital for testing.  *See, e.g.*, *United States v. Garrett*, 45 F.3d 1135, 1137, 1139-40 (7th Cir. 1995) (defendant transported to hospital for pulmonary testing).  Section 3161(h)(1)(A), by contrast, provides a specific exclusion for any time associated with mental competency proceedings.  I see no reason why the specific provision of § 3161(h)(1)(A) should be qualified by the more general provision of § 3161(h)(1)(F).  *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998).  In fact, we reached the same conclusion in *Murphy*.  *See* 241 F.3d at 456; *see also United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990).  The defendant in *Murphy* raised the same argument that Tinklenberg raises here, namely, that "a total of ten days can count as excludable time for transportation 'to and from' the place of examination and that any other delay is 'presumed to be unreasonable.'"  *Murphy*, 241 F.3d at 455.  We rejected this argument:

> We note that Defendant fails to point this Court to any evidence in the record demonstrating the dates upon which he was transported to and from the facility where the examination was conducted or the actual dates that Defendant was admitted or released from the facility.  *We also conclude that Defendant's contention is without merit.*

*Id.* (emphasis added).  The majority insists, however, that we did not decide the question in *Murphy* because "the defendant's failure to submit any evidence of the duration of his transportation in support of his argument for a ten-day limitation allowed this Court to reject the defendant's argument without reaching its merits."  (Maj. Op. at 9 n.2.)  This characterization of *Murphy* is refuted by the language quoted above.

Based on the plain language of the Speedy Trial Act and our prior decision in *Murphy*, I would find all time associated with Tinklenberg's mental competency examination, including transportation time, excludable pursuant to § 3161(h)(1)(A). Tinklenberg entered his initial appearance on October 31, 2005. One day elapsed before Tinklenberg filed a motion for a psychological evaluation to determine his competency to stand trial on November 2, 2005. The district court granted the motion and ordered psychological testing. After receiving a written evaluation and holding a competency hearing, the court found Tinklenberg to be competent in an order dated March 23, 2006.[1] Five days elapsed between the court's finding of competency on March 23, 2006, and March 29, 2006, when Tinklenberg filed a motion for an independent psychological examination. The court granted Tinklenberg's motion, received the second written evaluation on June 9, 2006, and made a second finding of competency. Sixty-five additional days elapsed between June 9, 2006, and the start of Tinklenberg's trial on August 14, 2006. By my calculations, a total of seventy-one nonexcludable days elapsed between October 31, 2005, and August 14, 2006–one day beyond what the Speedy Trial Act allows. *See* 18 U.S.C. § 3161(c)(1).

As to motions that do not delay the start of trial, several prudential considerations would prevent me from reaching the issue. First, it appears to be waived. Tinklenberg has not raised it in his appellate brief, a fact that ordinarily precludes our review. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) . Nor did he raise it in his August 11, 2006, Speedy Trial Act motion to the district court. *See Molina-Crespo v. U.S. Merit Sys. Prot. Bd.*, 547 F.3d 651, 662 (6th Cir. 2008). To the contrary, in his motion for reconsideration in the district court, Tinklenberg apparently accepted the proposition that certain days in August of 2006 were properly excluded pursuant to § 3161(h)(1)(D) although they did not delay trial. Second, I would not penalize the

---

[1] Although not dispositive in this case, I note that the court actually concluded that Tinklenberg was competent at the hearing held on the previous day. We have held, albeit in an unpublished disposition, that the § 3161(h)(1)(A) proceeding to determine the mental competency of the defendant is complete "when, after a competency hearing[,] the court declare[s the defendant] competent to stand trial." *United States v. Moore*, 961 F.2d 1579 (table), 1992 WL 92740, at *5 (6th Cir. 1992) (*per curiam*). That is, the day on which the court makes a finding of competency, rather than the day on which the written order of competency is docketed, should control the Speedy Trial Act clock. Here, the difference of one day does not affect my conclusion that the Speedy Trial Act was violated.

government and the district court for acting, in the absence of any controlling authority, upon the quite reasonable assumption that our circuit would align with the others to have considered the issue in finding those days to be excludable. Nevertheless, because the majority reaches the issue, I note my agreement with the majority's reading of § 3161(h)(1)(D) as a matter of statutory interpretation. After today, district courts should not exclude from the Speedy Trial clock days that are consumed by motion practice but that do not cause actual delay.

I agree, therefore, that the Speedy Trial Act was violated. Whether Tinklenberg's indictment should be dismissed with or without prejudice presents a closer question. As the majority acknowledges, several of the statutory factors point toward dismissal without prejudice. *See* 18 U.S.C. § 3162(a)(2). There is no suggestion of improper behavior on anyone's part. Rather, "the district court's error in this case was a good-faith misinterpretation of the Speedy Trial Act's requirements that resulted in a relatively short delay of the trial." *See United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000). Neither the government nor the district court could have been expected to anticipate our disagreement with the other ten circuits to have considered the § 3161(h)(1)(D) issue. Moreover, a dismissal with prejudice may have a negative impact on the administration of justice, *see* § 3162`(a)(2), in that the instant offense will be erased from Tinklenberg's record. Should Tinklenberg be prosecuted again in the future, his record will not reflect the true extent of his criminal history. Despite these concerns, I agree that retrying Tinklenberg would be a poor use of government resources and serve no worthwhile purpose. I therefore join the majority in finding that dismissal with prejudice is warranted.